**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

JULIO SABAS CANELA,

                Plaintiff,

                                        Case No. 6:17-cv-816-J-JRK

vs.

NANCY A. BERRYHILL,
Deputy Commissioner for Operations
of the Social Security Administration,
performing the duties and functions not
reserved to the Commissioner of
Social Security,

                Defendant.

_____/

## <u>OPINION AND ORDER</u>[1]

## <u>I. Status</u>

      Julio Sabas Canela ("Plaintiff") is appealing the Commissioner of the Social Security

Administration's ("SSA('s)") final decision denying his claim for disability insurance benefits

("DIB"). Plaintiff's alleged inability to work is a result of "[h]erniated discs in [the] back,"

diabetes, high blood pressure, high cholesterol, "[h]eart issues," and depression. Transcript

of Administrative Proceedings (Doc. No. 14; "Tr." or "administrative transcript"), filed July 24,

2017, at 85, 96, 199 (emphasis omitted). On October 14, 2014, Plaintiff filed an application

for DIB alleging an onset disability date of June 30, 2011. Tr. at 177. Plaintiff's application

---

[1]      The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. <u>See</u> Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 13), filed July 24, 2017; Reference Order (Doc. No. 16), entered July 26, 2017.

was denied initially, <u>see</u> Tr. at 85-93, 95, 109-11, 112, and was denied upon reconsideration, <u>see</u> Tr. at 96-107, 108, 114-18, 119.

On September 7, 2016, an Administrative Law Judge ("ALJ") held a hearing, during which he heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 33-80. At the time of the hearing, Plaintiff was fifty-two years old. <u>See</u> Tr. at 85, 96 (indicating Plaintiff's date of birth). On November 22, 2016, the ALJ issued a Decision, finding Plaintiff not disabled through the date of the Decision. Tr. at 15-27.

On January 20, 2017, Plaintiff requested review by the Appeals Council of the Decision. Tr. at 7-11. The Appeals Council then accepted additional evidence consisting of a brief authored by Plaintiff's counsel. Tr. at 4, 5; <u>see</u> Tr. at 7-10 (brief). On March 8, 2017, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner. On May 8, 2017, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff raises three issues: 1) whether "[t]he [ALJ] failed to apply the correct legal standards to the opinion of [Plaintiff's] treating physician Dr. [Ramesh M.] Patel[2]"; 2) whether "[t]he Commissioner failed to satisfy her burden of proof at step five of the sequential evaluation process"; and 3) whether "[t]he ALJ violated [Plaintiff's] due process rights." Plaintiff's Brief (Doc. No. 18; "Pl.'s Br."), filed September 25, 2017, at 1; <u>see</u> Pl.'s Br. at 8-11 (first issue), 11-14 (second issue), 14-17 (third issue). On November 21,

_____

2      Dr. Ramesh Patel works with Dr. Varesh Patel at Advanced Family Practice. The administrative transcript contains progress notes from Advanced Family Practice spanning June 27, 2013 through June 27, 2016. <u>See</u> Tr. at 339-54, 369-400, 402-454.

2017, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem.") addressing the issues raised by Plaintiff. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be affirmed.

## II. The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ engaged in the five-step sequential inquiry. See Tr. at 17-27. At step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of June 30, 2011 through his date last insured of March 31, 2015." Tr. at 17 (emphasis and citation omitted). At step two, the ALJ found that "[t]hrough the date last insured, [Plaintiff] had the following severe impairments: lumbar degenerative disc disease, diabetes mellitus, knee impairment, depression and anxiety

_____

[3]         "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

disorder." Tr. at 17 (emphasis and citation omitted). At step three, the ALJ ascertained that "[t]hrough the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 18 (citation omitted).

The ALJ determined that, through the date last insured, Plaintiff had the following RFC:

> [Plaintiff could] perform light work as defined in 20 [C.F.R. §] 404.1567(b)[.] He [could] occasionally stoop, kneel, crouch, or crawl; [could] never climb ladders, ropes, or scaffolds; [could] occasionally climb ramps or stairs. Should avoid exposure to hazards, such as heights or machinery with moving parts. Should avoid concentrated exposure to dusts, fumes, gases, odors, or poorly ventilates areas. No production rate pace work. Occasional changes in routine work place setting.

Tr. at 20 (emphasis omitted). At step four, the ALJ relied on the testimony of the VE and found that "[t]hrough the date last insured, [Plaintiff] was unable to perform any past relevant work." Tr. at 25 (emphasis and citation omitted). At step five, after considering Plaintiff's age ("[forty-six] years old . . . on the alleged onset date"), education ("a limited education"), work experience, and RFC, the ALJ again relied on the testimony of the VE and found that "[t]hrough the date last insured . . . there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed." Tr. at 26 (emphasis and citation omitted). Specifically, the ALJ found that Plaintiff could have performed the following jobs: "Marker"; "[R]outer"; and "Checker I." Tr. at 27. The ALJ concluded that Plaintiff "was not under a disability . . . at any time from June 20, 2011, the alleged onset date, through March 31, 2015, the date last insured." Tr. at 27 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV. Discussion

As noted above, Plaintiff raises three issues: 1) whether the ALJ properly assessed Dr. Ramesh Patel's opinion; 2) whether the ALJ erred in making his findings at step five of

the sequential inquiry; and 3) whether the ALJ violated Plaintiff's right to due process. See Pl.'s Br. at 1. The undersigned addresses the issues in turn.

## A. ALJ's Assessment of Dr. Ramesh Patel's Opinion

### 1. Parties' Arguments

Plaintiff contends that "[t]he ALJ's reason for rejecting Dr. [Ramesh] Patel's opinion is vague and conclusory." Id. at 10. According to Plaintiff, "[t]he ALJ failed to cite to any evidence or explain how Dr. [Ramesh] Patel's opinion was inconsistent with the 'other substantial evidence.'" Id. (quoting Tr. at 23). Plaintiff further argues that "[t]he ALJ overlooked the MRI of [Plaintiff's] lumbar spine that Dr. [Ramesh] Patel ordered[,] which revealed significant findings in support of his opinion." Id. (citation omitted).

Responding, Defendant asserts that "courts have observed that check-off forms like the one[ ] Dr. [Ramesh] Patel completed have little probative value." Def.'s Mem. at 6 (citations omitted). Defendant contends that "Dr. [Ramesh] Patel cites no objective findings, nor gives any rationale for his assent to the described limitations." Id. at 7. According to Defendant, Dr. Ramesh Patel's opinion is inconsistent with his own progress notes, the other medical evidence, and Plaintiff's activities of daily living. Id. at 7-8. Defendant asserts that "the ALJ's discussion of the record evidence and what it shows when considered with the ALJ's rationale for the weight given to Dr. [Ramesh] Patel's opinion is sufficient for this Court to perform a meaningful review." Id. at 9 (citations omitted).

**2. Applicable Law**

The Regulations[4] establish a "hierarchy" among medical opinions[5] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." <u>McNamee v. Soc. Sec. Admin.</u>, 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); <u>see also</u> 20 C.F.R. §§ 404.1527(e), 416.927(f).

---

[4]    On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. <u>See</u> <u>Revisions to Rules Regarding the Evaluation of Medical Evidence</u>, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Because Plaintiff filed his claim before that date, the undersigned cites the rules and Regulations that were in effect on the date of the ALJ's Decision, unless otherwise noted.

[5]    "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); <u>see also</u> 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

With regard to a treating physician or psychiatrist,[6] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. it. Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Hargress, 883 F.3d at 1305 (citation omitted); Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan,

---

[6] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440. When an ALJ does not describe the weight assigned to medical opinions, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Cowart, 662 F.2d at 735. It is

not up to a reviewing court to scour the record to find support for an ALJ's decision; rather, the ALJ must support his or her decision within. See Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir.1984) (declining "to affirm simply because some rationale might have supported the ALJ's conclusion").

### 3. Dr. Ramesh Patel's Opinion/ALJ's Findings/Analysis

On August 31, 2016, Dr. Ramesh Patel opined that the following symptoms and limitations reported by Plaintiff are consistent with his medical findings and observations: "the need to lie down most of the time due to back pain"; "the inability to sit upright in a chair for two hours or more in an eight-hour workday[,] five days a week due to pain"; "the inability to be on his feet (standing or walking) for two or more hours in an eight-hour workday[,] five days a week due to pain"; "pain which prevent[ed] him from bending"; "pain and/or medication side effects which prevent[ed] him from concentrating about twenty-five percent of the time"; "the need for frequent (at least hourly) unscheduled breaks of ten to fifteen minutes"; and the "inability to perform even sedentary work activity eight hours per day[,] five days per week on a reliable and sustained basis." Tr. at 529 (capitalization omitted).

The ALJ gave these opinions "little weight" on the grounds that they are "checkmarks on a form devised by the representative," they are "not supported by the doctor's own treatment notes[ or by] medically acceptable clinical and laboratory diagnostic techniques," and they are "inconsistent with the other substantial evidence in the record." Tr. at 23. The ALJ also stated that "[t]he issue of whether [Plaintiff] is disabled or not is reserved to the Commissioner[,] who is well versed in the assessment of functionality as it pertains to the disability provisions of the Social Security Act and Regulations." Tr. at 23.

Upon review, the undersigned finds that the ALJ did not err in assessing Dr. Ramesh Patel's opinions. The grounds upon which the ALJ discounted Dr. Ramesh Patel's opinions are supported by substantial evidence.

First, Dr. Ramesh Patel's opinions are conclusory. He merely filled out a check-off form and provided no support for his opinions. Tr. at 529; see Schnorr, 816 F.2d at 582; Provenza v. Comm'r of Soc. Sec., No. 2:15-cv-432-FTM-CM, 2016 WL 3475641, at *6 (M.D. Fla. June 27, 2016) (stating that "[f]orm questionnaires or so-called 'checklist' opinions generally are disfavored"); Hammersley v. Astrue, No. 508-cv-245-OC-10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) (noting that "courts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions").

Second, regarding Dr. Ramesh Patel's opinion as to Plaintiff's ability to work, Tr. at 529, this is an opinion on an issue reserved for the Commissioner. See Denomme v. Comm'r, Soc. Sec. Admin., 518 F. App'x 875, 878 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1)) (holding that opinions on issues such as whether a condition would likely prevent a claimant from maintaining gainful employment are not medical assessments, but are rather opinions on issues reserved to the Commissioner's discretion).

Third, the ALJ correctly observed that Dr. Ramesh Patel's opinions are inconsistent with the doctor's own progress notes and other evidence of record. The ALJ stated progress notes from Advanced Family Practice—where Dr. Ramesh Patel and Dr. Varesh Patel work—reflect that Plaintiff received "non-aggressive and conservative treatment for his alleged impairments that responded well to medication management." Tr. at 21; see, e.g., Tr.

at 371, 375, 379, 382, 385, 388, 391, 394, 397, 400 (Dr. Ramesh Patel's and Dr. Varesh Patel's progress notes indicating Plaintiff's pain was stable and controlled by medication); Tr. at 397 (November 7, 2014 progress note from Dr. Varesh Patel showing Plaintiff used a TENS unit, did home physical therapy, and underwent epidural and facet blocks and trigger point injections). Further, the ALJ summarized notes from Dr. Ramesh Patel, Dr. Varesh Patel, and other medical sources that reveal largely normal examination findings. Tr. at 21-22; see, e.g., Tr. at 378, 381, 384, 390, 393, 396, 399 (progress notes from Dr. Ramesh Patel and Dr. Varesh Patel spanning December 5, 2014 through May 26, 2015 indicating Plaintiff's extremities had full range of motion, no edema, no clubbing, no cyanosis, and "5/5 strength"); Tr. at 300 (April 11, 2012 progress note from Dr. David S. Klein[7] indicating that Plaintiff "ambulate[d] to the examination room without assistance," he was "able to sit comfortably on the examination table without difficulty or evidence of pain," and he was in "no distress"); Tr. at 319, 311 (March 7, 2012 and October 5, 2012 progress notes from Dr. Roberto Perez[8] indicating Plaintiff ha[d] a "normal gait"); Tr. at 367 (January 13, 2015 examination note from Dr. Alex C. Perdomo[9] indicating Plaintiff's back showed "no deformities with mild tenderness over the lumbar paraspinal muscles," and the x-ray of Plaintiff's lumbosacral spine "is consistent with mild to moderate osteoarthritis and degenerative disc disease of the lumbosacral spine").

---

[7]     Dr. Klein treated Plaintiff on April 11, 2012 primarily for back pain. See Tr. at 298-303.

[8]     According to the administrative transcript, Dr. Perez treated Plaintiff from March 7, 2012 through October 5, 2012, for a variety of issues including high cholesterol, hypertension, and anxiety. See Tr. at 310-21.

[9]     Dr. Perdomo examined Plaintiff on January 13, 2015 at the request of the SSA. See Tr. at 366-68.

As to Plaintiff's argument that the ALJ "overlooked" an MRI conducted in September 2015, Plaintiff does not explain how the MRI results support Dr. Ramesh Patel's opinions. See Pl.'s Br. at 10. The MRI shows mild to moderate findings and merely confirms Plaintiff had "lumbar disc disease." Tr. at 462. The ALJ's failure to refer specifically to the MRI does not render the Decision unsupported by substantial evidence. See Dyer, 395 F.3d at 1211 (stating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [a reviewing court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole").

In sum, the ALJ detailed the weight assigned to Dr. Ramesh Patel's opinions, and he articulated specific reasons amounting to good cause for discounting the opinions. See Phillips, 357 F.3d at 1240-41. The ALJ properly considered Dr. Ramesh Patel's opinion, and substantial evidence supports the ALJ's reasoning.

## B. Step-Five Finding

### 1. Parties' Arguments

Plaintiff argues that "the [VE's] testimony regarding the number of jobs available in the national economy is not supported by substantial evidence." Pl.'s Br. at 12. According to Plaintiff, "[t]here is no evidence in the record to establish that the numbers testified to by the [VE] are reliable." Id. at 12-13. Plaintiff asserts that the VE "merely regurgitated numbers that were given to her by [Job Browser Pro,] a computer program" and that she "failed to provide any other evidence related to the numbers of jobs available in the national economy." Id. at 13. Citing the unpublished decision of Vargas v. Comm'r of Soc. Sec., No. 6:14-cv-01806-

KRS (M.D. Fla. Jan. 27, 2016), Plaintiff argues the VE's reliance on Job Browser Pro is insufficient to provide substantial evidence at step five of the sequential inquiry. Pl.'s Br. at 13.

Responding, Defendant argues that "it is not evident from [the] VE's testimony that she relied at all on Job Browser Pro . . . ." Def.'s Mem. at 11. According to Defendant, the VE's testimony "fails to show that [she] used Job Browser Pro to obtain the job numbers as opposed to using the same methodology that the software uses to obtain the job numbers herself." Id. at 12 (citation omitted). Defendant asserts that "even if [the VE] relied on Job Browser Pro, she also relied on her own expertise, which under the case law Plaintiff[ ] cites is not error." Id.

### 2. Applicable Law

At step five in the sequential inquiry, "the ALJ must determine if there is other work available in significant numbers in the national economy that the claimant has the ability to perform." Phillips, 357 F.3d at 1239. To make this determination, the ALJ may pose a hypothetical question to a VE. See Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing Wolfe v. Chater, 86 F.3d 1072, 1077-78 (11th Cir. 1996)). "In order for a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson, 284 F.3d at 1227 (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999)). The VE may rely on his or her knowledge and expertise without producing detailed reports or statistics. Curcio v. Comm'r of Soc. Sec., 386 F. App'x 924, 926 (11th Cir. 2010); Bryant v. Comm'r of Soc. Sec., 451 F. App'x 838, 839

(11th Cir. 2012). "Unless the VE is proven incorrect, the ALJ may rely on the VE's testimony." Wilson, 284 F.3d at 1227 (citing Jones, 190 F.3d at 1230).

Some courts have held that a VE's "exclusive reliance on the raw number of jobs produced by a software program, including Job Browser Pro software, is insufficient to provide substantial evidence at step five of the sequential evaluation unless the VE also provides evidence of the number of jobs available in the national economy based on her own knowledge and experience." Order (Doc. No. 20) at 17, Vargas, No. 6:14-cv-01806-KRS; see also Thompson v. Comm'r of Soc. Sec., No. 2:15-cv-53-FtM-CM, 2016 WL 1008444, at *6 (M.D. Fla. Mar. 15, 2016) (unpublished) (finding "the VE's exclusive reliance on the software program without any testimony or evidence that she could endorse those numbers based on her knowledge and expertise rendered her testimony unreliable").

Other courts have found no error in the VE's use of this software, particularly when the VE relied on her experience and knowledge as well. See Middleton v. Comm'r of Soc. Sec., No. 6:17-cv-85-Orl-40TBS, 2018 WL 1371246, at *7-8 (M.D. Fla. Feb. 27, 2018) (unpublished) (finding no error in VE's use of Job Browser Pro because she testified "she relied on her own experience and expertise" as well, and she stated her testimony was consistent with the DOT), report and recommendation adopted, No. 6:17-cv-85-Orl-40TBS, 2018 WL 1367388 (M.D. Fla. Mar. 16, 2018) (unpublished); Murphy v. Colvin, No. 5:15-cv-97/EMT, 2016 WL 5791412, at *7 (N.D. Fla. Sept. 30, 2016) (unpublished) (finding no error because the VE's testimony "suggest[ed] that the VE [did] not simply rely upon [Job Browser Pro] but use[d] its data in her overall analysis," and the VE "testified that her testimony was consistent with the [Dictionary of Occupational Titles ("DOT")]).

**3. VE's Testimony/Analysis**

The undersigned finds the ALJ did not err in relying at step five on the VE's testimony because the VE did not rely solely on Job Browser Pro to calculate the number of available jobs. The VE's testimony regarding Job Browser Pro is not a model of clarity, but even if she used Job Browser Pro, she testified that she relied on her experience and that her testimony was consistent with the DOT. Tr. at 74.

When questioned by Plaintiff's counsel, the VE testified as follows regarding Job Browser Pro:

> Q      All right and as far as the numbers go, did you use any software to -- to help find -- find the number of jobs available in the national economy?
>
> A      The resources for the numbers are those published by the Bureau of Labor Statistics and the National American Industry of Classification System and the Census but we do use the Skill Methodology to actually calculate approximate numbers in the economy.
>
> Q      Okay but the -- the two other sources you mentioned you -- you didn't use those to actually get the numbers but to find out there were 291,000 marker jobs. I mean you didn't do an independent --
>
> A      But we used -- once again the numbers -- the resources of the -- those -- Bureau of Labor Statistics is first for the occupational -- the number of the occupational employment survey.
>
> Q      Okay, but let me just stop you again. They don't -- they don't supply the numbers based on the DOT description; correct?
>
> A      No, that's why we use the national industry -- the National -- North American -- sorry -- North American Industry of Classification System to then -- which does have a frequency of jobs within an occupational employment survey group and then -- so again it's a process and then we use the -- [INAUDIBLE] Methodology does guide -- I can read over it if you want. But first you have the big Occupation Employment Survey Number and then the North American Industry of Classification System has a percentage of jobs designated by industries that would have a certain guide within the industry. That gives you what they call a weighted number.

-16-

Q     But they don't actually give you the number? I mean you use job browser to actually get the finding?

A     No, that's what I'm explaining is the methodology to take it from the occupational survey group to an actual DOC.

Q     But did you use that or did Job Browser do that?

A     That's a Skill Tran methodology the Job Browser does.

Q     Okay, so you used Job Browser and Skill Tran to get the numbers but that's the methodology that they use?

A     Yes, it's their methodology.

Tr. at 76-78.

The VE testified the following as to her reliance on experience:

[VE]   Marker, 291 -- oh, no, it's going to 209 -- 209.587- 034, light, SVP 2, approximately 291,000 jobs in the national economy. Router, 222.587-038, light, SVP 2, approximately 41,000 jobs in the national economy. And checker 1, 222.687-010, light, SVP 2, approximately 24,000 jobs in the national economy.

[ALJ]  All right. Is your testimony consistent with the [DOT]?

[VE]   Yes, Your Honor, and my additional experience.

Tr. at 74.

Accordingly, the undersigned concludes the VE did not exclusively rely on Job Browser Pro and finds no error in the ALJ's reliance on the VE's testimony when making his step-five findings. See Curcio, 386 F. App'x at 926; Middleton, 2018 WL 1371246, at *7-8.

**C. Due Process**

    **1. Parties' Arguments**

Plaintiff requested that the ALJ subpoena Dr. Perdomo and Dr. Cynthia Kimble.[10] Pl.'s Br. at 15.[11] According to Plaintiff, the ALJ did not issue the requested subpoenas. Id. at 15-16. Plaintiff argues the ALJ violated the Hearings, Appeals and Litigation Law Manual ("HALLEX") because he "failed to provide [Plaintiff] with written notification that he was denying his request or provide any rationale as to why he was denying the request." Id. at 16. Plaintiff contends he "had the right to cross-examine Dr. Kimble regarding the basis for her opinion when she purportedly found that Dr. Perdomo's opinion was consistent with the medical evidence, but then found that [Plaintiff] was not as limited as opined by Dr. Perdomo." Id. According to Plaintiff, "Dr. Perdomo's opinion is extremely important to [Plaintiff's] claims as it would preclude him from performing all the requirements of light work." Id.

Responding, Defendant contends that "none of [Plaintiff's] observations establish that Plaintiff needed to cross-examine these doctors as any arguments Plaintiff had about the probative value of their opinions could have been raised with the ALJ for his consideration." Def.'s Mem. at 15. According to Defendant, "Plaintiff's proffer does not show that testimony from these doctors would . . . have added anything material to the record." Id. Thus, argues

---

[10]    Dr. Kimble is the non-examining doctor who reviewed the evidence of record at the reconsideration level. See Tr. at 97-105.

[11]    Plaintiff also requested subpoenas for two other individuals, but his argument focuses on the subpoenas for Dr. Perdomo and Dr. Kimble. See generally Pl.'s Br. at 15-17.

Defendant, "Plaintiff has failed to demonstrate any gaps in the record that result in unfairness or clear prejudice . . . ." Id.

### 2. Applicable Law

"When it is reasonably necessary for the full presentation of a case, an [ALJ] . . . may, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses . . . ." 20 C.F.R. § 404.950(d)(1). According to section I-2-5-78(C) of the HALLEX:

> If [the] ALJ denies a claimant's request for a subpoena, the ALJ must notify the claimant of the denial, either in writing or on the record at the hearing. In either situation, the ALJ will enter the request into the record as an exhibit. If the denial is in writing, the ALJ will also enter the denial notice into the record as an exhibit. Whether on the record or in writing, the ALJ will explain why the ALJ declined to issue a subpoena.

"[The Court of Appeals for the Eleventh Circuit] has not decided whether the HALLEX carries the force of law." McCabe v. Comm'r of Soc. Sec., 661 F. App'x 596, 599 (11th Cir. 2016). The Court of Appeals for the Fifth Circuit has held that "[w]hile HALLEX does not carry the authority of law . . . 'where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required.'" Newton v. Apfel, 209 F.3d 448, 459 (5th Cir. 2000) (quoting Hall v. Schweiker, 660 F.2d 116, 119 (5th Cir. 1981)).

"Should a violation of the HALLEX prejudice the claimant, 'the result cannot stand.'" Howard v. Astrue, 505 F. Supp. 2d 1298, 1302 (S.D. Ala. 2007) (quoting Newton, 209 F.3d at 459); see also Hall, 660 F.2d at 119 (holding that "[s]hould an agency in its proceedings violate its rules and prejudice result, the proceedings are tainted and any actions resulting from the proceeding cannot stand"). A finding of prejudice "requires a showing that the ALJ

did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision." <u>Kelley v. Heckler</u>, 761 F.2d 1538, 1540 (11th Cir. 1985).

### 3. Analysis

Upon review of the administrative transcript, the undersigned finds the ALJ violated section I-2-5-78(C) of the HALLEX because he failed to notify Plaintiff of his apparent denial of the requested subpoenas. For the reasons stated below, however, this failure did not prejudice Plaintiff.

Plaintiff correctly observes Dr. Kimble stated that Dr. Perdomo's opinion is consistent with the medical evidence, but then found Plaintiff is not as limited as Dr. Perdomo opined. <u>Compare</u> Tr. at 103 (Dr. Kimble's opinion that Plaintiff could "[s]tand and/or walk" for a total of six hours in an eight-hour workday and could sit for a total of six hours in an eight-hour workday), <u>with</u> Tr. at 368 (Dr. Perdomo's opinion that Plaintiff could "stand and walk for four hours a day in an eight-hour workday" and could "sit for four hours a day in an eight-hour workday"). Testimony by Dr. Kimble on this point, however, would not have added any relevant information to the record before the ALJ. It is evident from Dr. Kimble's opinions that she did not agree with all of Dr. Perdomo's opinions. Likewise, Plaintiff's inability to cross-examine Dr. Kimble on the bases for her opinions did not prejudice Plaintiff because Dr. Kimble stated the reasons for the limitations she assigned in her opinion. <u>See</u> Tr. at 102-05. Thus, remand is not warranted.

## V. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

2.    The Clerk is further directed to close the file.

**ORDERED** at Jacksonville, Florida on September 6, 2018.

_James R. Klindt_
**JAMES R. KLINDT**
United States Magistrate Judge

bhc
Copies to:
Counsel of record